IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PERNELL DAVIS,

        Plaintiff,

V.                                               Civ. No. 03-131-LPS

THOMAS CARROLL, et al.

        Defendants.

Robert K. Beste, III, Esquire, Ariel P Sloan, Esquire
Smith, Katzenstein, & Jenkins LLP, Wilmington, Delaware.

    Attorneys for Plaintiff.

Ophelia M. Waters, Esquire, Julie M. Donoghue, Esquire
State of Delaware Department of Justice, Wilmington, Delaware.

    Attorneys for Defendants.

**MEMORANDUM OPINION**

July 13, 2012
Wilmington, Delaware

[signature]

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff, Pernell L. Davis ("Plaintiff), a former inmate at the Delaware Correctional Center ("DCC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Presently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the motion will be granted in part and denied in part.

## II. BACKGROUND

In September 2002, while an inmate at the DCC, Plaintiff suffered a head injury at the hands of another inmate as a result of being struck with a mop ringer in the back of the head. He was airlifted to a hospital and treated for his serious injuries, which included a skull fracture.[1] After receiving treatment, Plaintiff was put in an isolation cell. He alleges that, during his time in isolation, he was denied medical care by Defendants. Additionally, he alleges that Defendants used excessive force against him in violation of his Eighth Amendment rights.

Plaintiff also contends that, following his release from the DCC, Defendants retaliated against him for exercising his First and Eighth Amendment rights, in that Defendants took him into custody in May 2007 for a parole violation. Plaintiff further alleges that he was beaten and threatened by several of the Defendants in an effort to prevent him from prosecuting his lawsuit.

Plaintiff initially filed his suit *pro se* on January 27, 2003. (D.I. 2) On September 27, 2005, the Court denied Defendants' motion to dismiss Plaintiff's Amended Complaint (D.I. 19), which alleged violations of Plaintiff's Eighth Amendment rights (D.I. 41, 42). After being

---

[1] As Defendants state in their reply brief, "The parties agree that Plaintiff was struck on the head with a 'scrub brush mop' by an inmate in September 2002. The parties agree that Plaintiff sustained a serious injury as a result of the attack." (D.I. 158 at ¶ 7)

1

assigned counsel (D.I. 51, 52), Plaintiff filed a Supplemental Complaint on January 18, 2010 (D.I. 79) and Second Amended Complaint on January 29, 2010 (D.I. 83). On January 27, 2011, Plaintiff executed a declaration (D.I. 148 Ex. D) verifying the allegations in his initial Amended Complaint (D.I. 19) and Second Amended Complaint (D.I. 83).

The remaining Defendants are: (1) Thomas Carroll, Charles Cunningham, Mike Moran, Edward Rutkowski, Michael Megee, Ron Drake, and James Gardels ("DCC Defendants"); (2) Melissa Roberts, Daniel Collins, Jeffrey Henderson, Shaun Hearn, Christopher Schemm, and Christopher Albence ("P&P Defendants"); and (3) Adrienne Hanna, David Hamrick, Steven Hills, Jacob and Joshua Connors, Joseph Mears, and John Hilliard ("SCCC Defendants") (hereinafter collectively, "Defendants').

Defendants filed their motion for summary judgment on December 20, 2010. (D.I. 138) The Court heard oral argument on December 14, 2011. (*See* D.I. 169) ("Tr.") Post-hearing briefing was completed on January 30, 2012. (D.I. 168, 170, 171)

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or

2

other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted) (emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a

3

scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Denial of Medical Care

Plaintiff alleges a violation of 42 U.S.C. Section 1983 based on violation of his Eighth Amendment rights in that he was denied adequate medical care. This claim is brought against the DCC Defendants: Carroll, Drake, Cunningham, Rutkowski, Megee, Moran, and Gardels. The DCC Defendants seek summary judgment.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" and, hence, violates the Eighth Amendment's proscription against cruel and unusual punishment. *Id.* at 103-05.

To prevail on such a claim, an inmate must "demonstrate (1) that the defendant [was] deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999). An inmate may show that a prison official was deliberately indifferent through evidence that the official "intentionally den[ied] or delay[ed] access to medical care." *Id.* While prison administrators are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by . . . [a] doctor," they can be found to be deliberately indifferent if they refuse to provide treatment that has been prescribed by that doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69

4

(3d Cir. 1993). On the other hand, "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

In this case, Plaintiff has presented evidence upon which a reasonable jury could base a finding of deliberate indifference to serious medical needs by prison officials. According to the medical records, Plaintiff was prescribed physical therapy three times a week for six weeks as part of his treatment for a brain injury sustained when he was hit in the head with a mop ringer. (D.I. 168, Ex. D, Ex. E) Plaintiff alleges in his verified complaint that he was deprived of access to this therapy, as he was not let out of his cell or enabled in any other way to complete the prescribed physical therapy regimen. (D.I. 148, Ex. I; Ex. A at Notes P.1; Ex. E at 103-04,133-35)[2] These allegations are supported by Plaintiffs' deposition testimony; they do not appear to be contradicted by the medical records in evidence. Indeed, as already noted and as Plaintiff summarizes in its briefing, the medical records may be found to establish several orders for therapy that was not provided to Plaintiff. (*See, e.g.*, D.I. 168 at 3 (citing exhibits); D.I. 171 at 2-3 (same)) If proven, the denial of access to medically-ordered physical therapy could be found to constitute deliberate indifference to Plaintiff's medical needs. *See Durmer*, 991 F.2d at

---

[2] The Third Circuit has indicated that verified complaints may be treated as affidavits "in opposition to summary judgment." *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985). If the verified statements contained in the complaint conflict with other evidence and offer a different version of events that a reasonable jury could find was true, a genuine issue of fact may have been created. *See id.; see also Abraham v. Costello*, 717 F. Supp.2d 391, 396-97 (D. Del. 2010) (considering verified complaint in course of evaluating summary judgment record). Defendants contend that, even if the verified complaint is considered, it is "insufficient to defeat summary judgment, especially in light of the overwhelming medical documentary evidence demonstrating that Plaintiff received medical care." (D.I. 170 at 4) However, as already noted, on summary judgment the Court cannot weigh the evidence or make credibility determinations. *See Reeves*, 530 U.S. at 150.

5

69 n.13 (reversing grant of summary judgment to defendant-doctor where "there is a triable issue of fact as to whether Dr. O'Carroll knew that Durmer should receive physical therapy and deliberately failed to provide it for non-medical reasons"); *Muhammad v. New Jersey Dept. of Corr.*, 2006 WL 2385131, at *7 (D.N.J. Aug. 14, 2006) ("Muhammad alleges that despite his repeated sick call requests and complaints of pain from his back and hip injuries, Dr. Reddy refused, without medical justification, to provide physical therapy to plaintiff. These allegations, if true, suggest deliberate indifference.").

In the Court's view, *Spruill* does not, under the circumstances presented here, require judgment as a matter of law in favor of Defendants, even though each of the DCC Defendants are non-medical prison officials. *Spruill* contemplates that liability may be imposed on an official who has "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." 372 F.3d at 236. A reasonable factfinder may conclude that Defendants were deliberately indifferent to Plaintiff's medical needs in that they refused, for non-medical reasons, to provide physical therapy that was prescribed by physicians. *See Durmer*, 991 F.2d at 69 ("[I]f the failure to provide adequate care in the form of physical therapy was deliberate, and motivated by non-medical factors, then Durmer has a viable claim.").

A reasonable factfinder could believe Plaintiff's allegations. Hence, a reasonable factfinder could find the DCC Defendants were deliberately indifferent to Plaintiff's serious medical needs. Thus, the DCC Defendants' motion for summary judgment with regard to this claim will be denied.[3]

---

[3]In reaching its conclusions, the Court has considered *Reed v. St. Charles*, 561 F.3d 788 (8th Cir. 2009), which was cited by Defendants during oral argument and on which the Court received post-argument letter briefs. *Reed*, of course, is not binding precedent. The Court

## B.     Excessive Force

In evaluating Plaintiff's excessive force claim, "the core judicial inquiry is . . . [w]hether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. Macmillan*, 503 U.S. 1, 7 (1992). This inquiry "necessarily excludes . . . de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks omitted). Factors to be considered are "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). While not dispositive, the absence of physical injury is relevant to the analysis. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) ("An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim.").

The Court's analysis of Plaintiff's excessive force claim is different with respect to different Defendants.

Plaintiff alleges that Defendants Rutkowski and Megee choked him on multiple occasions

---

concludes that *Reed* does not alter the decisions reached in this Memorandum Opinion. The Court may not, on the summary judgment record in the instant case, reject Plaintiff's version of events in favor of Defendants' contrary version. *See generally Williams v. St. Joan of Arc Church*, 226 Fed. Appx. 180, 185-86 (3d Cir. Apr. 3, 2007) ("Therefore, even though in the final analysis and after observing the key parties testify, the jury may find Ms. Williams's claim unpersuasive, at this juncture we see enough of a genuine dispute on sufficiently material facts to permit a jury to resolve this case, and we will reverse the entry of summary judgment for the employer."). Unlike in *Reed*, 561 F.3d at 791, a reasonable jury could credit Plaintiff's version of events.

7

and that Rutkowski observed as other C/Os were beating Plaintiff. (D.I. 148 Ex. E at 89-91, 93-94, 97-98, 156) There are no medical or other records documenting any injuries sustained by Plaintiff from the claimed use of force. Plaintiff contends that this conduct extended over a substantial period, occurring while he was recovering from his head injury and continuing until the time he was transferred to another facility. (D.I. 148 Ex. E at 88-99) These allegations, despite a lack of documented injury, concern conduct that could be found to be of the "sort repugnant to the conscience of mankind," since the alleged violence against the Plaintiff occurred while he was recovering from a traumatic head and brain injury. *See Hudson*, 503 U.S. at 10. Additionally, Defendant Megee has admitted to telling Plaintiff on one occasion that another inmate "should have hit you harder." (D.I. 139 at 13 & Ex. L at 26-27) The Court finds that a reasonable juror could believe Plaintiffs' version of the events – set out in his verified allegations and deposition testimony – and, therefore, could find that Defendants Rutkowski and Megee used excessive force in violation of Plaintiff's Eighth Amendment rights. Therefore, with regard to Defendants Rutkowski and Megee, summary judgment will be denied.

With regard to the claim against Defendants Moran and Gardels, Plaintiff testified that those Defendants slammed him into walls and struck him, all in an attempt to coerce Plaintiff into "hyping up" the prison. (D.I. 148 Ex. E at 41, 43-46, 77-78)[4] Defendants understood these actions would "get a name for the jail." (D.I. 148 Ex. E at 21) There are no medical or other records documenting any injuries to Plaintiff from this alleged use of force. Plaintiff also failed to produce evidence of anything more than a push or shove by Defendants Moran and Gardels.

---

[4]Plaintiff explained that he was referring to a request to kill or rape someone, in exchange for which he would receive a pardon. (D.I. 148 Ex. E at 21-22, 32-34)

8

Considering all of the pertinent factors, no reasonable juror could find that Defendants Moran and Gardels violated Plaintiff's Eighth Amendment rights by using excessive force. Summary judgment will be granted with regard to the excessive force claims against these Defendants.

Finally, Plaintiff has adduced no evidence regarding excessive force by Defendants Carroll, Drake, and Cunningham. Accordingly, summary judgment will be granted to these Defendants on the excessive force claim.

### C. Retaliation

Plaintiff claims that Defendants Rutkowski and Megee, as well as the P&P Defendants and the SCCC Defendants, retaliated against him for exercise of his First Amendment right to file his complaint. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). Proof of a retaliation claim requires that Plaintiff demonstrate: (1) he engaged in constitutionally protected activity, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d. Cir. 2001).

Plaintiff's filing of his lawsuit is constitutionally protected conduct. *See Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). Thus, Plaintiff has satisfied the first part of the inquiry.

As for whether Plaintiff was subjected to adverse actions by a state actor, Plaintiff must show action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Plaintiff points to the following adverse actions: (1) physical violence and threats at the time he was taken into custody in May

9

2007, directed to trying to force Plaintiff to drop his lawsuit, after which Plaintiff was treated at Wilmington Hospital; (2) physical violence directed at him at the Violation of Probation Center; and (3) spreading rumors that Plaintiff was a "snitch" while he was in custody on a violation of probation. There is evidence in the record from which a reasonable juror could find each of these actions occurred. (*See, e.g.*, D.I. 148 Ex. B at 2-3, 5-6, Ex. L at 17; D.I. 154) If so, these actions would be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] right," satisfying the second prong. *Mitchell*, 318 F.3d at 530; *see also Miller v. Coning*, 2011 WL 2708649, at *3-4 (D. Del. July 12, 2011) (recognizing implications of being labeled a "snitch").

Finally, Plaintiff must show that his protected conduct was a substantial motivating factor for the adverse action taken by Defendants. This causal connection can be shown by "suggestive temporal proximity," but lack of such proximity does not by itself defeat a claim of retaliation. *See Allah v. Al-Hafeez*, 208 F. Supp. 520, 535 (E.D. Pa. 2002). There is record evidence from which this link could be made with respect to certain of Defendants, but not others.

Plaintiff has adduced evidence of the use of force and threats in retaliation for his lawsuit by Defendants Rutkowski and Schemm. These Defendants knew of this lawsuit at the time Plaintiff was taken into custody. (*See* D.I. 148 Ex. K at 34, 56) In his verified complaint, Plaintiff contends that Defendants Rutkowski and Schemm informed him that they were retaliating against him for filing and prosecuting his original complaint. (D.I. 148 Ex. B at 3) Although Defendants deny all of Plaintiff's allegations, the record reveals a genuine dispute of material fact, on which a reasonable juror could find for Plaintiff.

Plaintiff has further presented evidence from which it might be found that Defendants

10

Hanna and Hamrick used physical force on him at the Violation of Probation Center in retaliation for his filing of his initial lawsuit. Plaintiff asserts in his verified complaint that he was put in a cell by Defendant Hanna, then Defendants Hanna and Hamrick instructed him to drop his lawsuit. (D.I. 148 Ex. B at 4) When Plaintiff refused, Defendants Hanna and Hamrick allegedly assaulted him. (*See id.*; *see also* D.I. 154) Defendant Hanna disputes Plaintiff's account. (D.I. 148 Ex. Q at 17) Again, there is a genuine dispute of material fact on which a reasonable juror could find for Plaintiff.

There is also evidence in the record that would support a finding that Defendant Megee threatened Plaintiff with physical harm at a time Megee knew of Plaintiff's lawsuit, and that Megee informed Plaintiff his threats were designed to cause him to drop his suit. (D.I. 148 Ex. B at ¶¶ 20-21)

The record does not contain evidence that any other Defendant involved in taking Plaintiff into custody knew of his lawsuit. Nor does Plaintiff contend that any other Defendant told him that any action they took was in retaliation for his lawsuit. Accordingly, each of the Defendants other than those named above are entitled to summary judgment on the retaliation claim.

In sum, with respect to Plaintiff's retaliation claim, Defendants' Rutkowski, Schemm, Hanna, Hamrick, and Megee's motion for summary judgment will be denied, while the remaining Defendants' motion for summary judgment will be granted.

### D. Conspiracy

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."

11

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999), *superseded by statute on other grounds as stated in P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). Here, Plaintiff has neither adduced evidence nor alleged (in anything other than a conclusory manner) an agreement to violate his constitutional rights. Defendants' motion for summary judgment on the conspiracy claim will be granted. *See Watson v. Secretary Pennsylvania Dept. of Corrections*, 436 Fed. Appx. 131, 137 (3d Cir. July 8, 2011) (dismissing conspiracy claim "describ[ing] concerted action against him, but no agreement to violate his rights").

## V. CONCLUSION

For the reason stated above, Defendants' motion for summary judgment will be granted in part and denied in part. Specifically, (1) with respect to Plaintiff's claim alleging deliberate indifference toward Plaintiff's medical treatment, Defendants' motion for summary judgment will be denied; (2) with respect to Plaintiff's claim alleging excessive force, Defendants' motion for summary judgment will be granted to all Defendants except Rutkowski and Megee; (3) with respect to Plaintiff's claim alleging retaliation, Defendants' motion for summary judgment will be granted to all Defendants except Rutkowski, Schemm, Hanna, Hamrick, and Megee; and (4) with respect to Plaintiff's claim alleging conspiracy, Defendants' summary judgment motion will be granted. An appropriate Order follows.[5]

---

[5]The Court has additionally considered Defendants' contentions regarding their lack of affirmative role in any constitutional deprivation, lack of personal involvement, and qualified immunity. (D.I. 139 at 18-20; *see also* D.I. 148 at 19-20) These defenses have been taken into account in the rulings explained above. To the extent the motion for summary judgment has been denied, the Court has concluded that none of these additional defenses alter the conclusions explained above. (*See* D.I. 41 at 5-11)